# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TROY EMANUEL, JR.,

    Plaintiff

v.

D. KIRKLAND,

    Defendant

Case No.: 3:21-cv-00308-CSD

**ORDER REGARDING THE MOTIONS FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION TO SEAL, AND PLAINTIFF'S MOTION REGARDING SETTLEMENT**

Re: ECF No. 53, 58, 59, 69

Before the court are Plaintiff's motion for summary judgment, (ECF No. 53), and Defendant's motion for summary judgment. (ECF Nos. 58, 58-1 to 58-10, 60-1 to 60-2 (sealed), 62-1 (manual filing), 65-1 to 65-4.) Defendant's motion also served as a response to Plaintiff's motion. (ECF No. 58.) Plaintiff filed a reply to his motion for summary judgment but did not file a response to Defendant's motion. (ECF No. 67.)

After a thorough review, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted. The court also grants Defendant's motion to file exhibits under seal, (ECF No. 59) and denies Plaintiff's motion for settlement before trial, (ECF No. 69).

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1-1.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed on an Eighth Amendment claim for excessive force against a single Defendant: Dent Kirkland. (*See* ECF No. 5.) Plaintiff alleges that on January 4, 2021, Defendant came to Plaintiff's cell door to serve him food. Plaintiff alleges that he put his hand on top of the food tray and asked Defendant why he had not fed a black inmate with a red box on his door. In response, Defendant allegedly slammed Plaintiff's arm in the food slot four or five times before putting his body weight on the food slot to further smash Plaintiff's arm. Following this, Plaintiff alleged Defendant said he was tired of Plaintiff and if Plaintiff did not close the food slot, Defendant would break Plaintiff's arm.  (*Id.*)

**A. Motions for Summary Judgment**

Plaintiff filed a motion for summary judgment, arguing there are no genuine issues of material facts and reiterating the allegations made in his complaint. Plaintiff also alleges "all of the Defendants" are liable, however, there is only one Defendant in this case. Plaintiff further discusses allegations that are not a part of his excessive force claim, such as that Defendant wrote up a false disciplinary report based on the incident and that he was not given a proper medical assessment after the incident. (*See* ECF No. 53.)

Defendant both opposes Plaintiff's motion and moves for summary judgment on the grounds that: (1) Plaintiff is not entitled to summary judgment because he failed to provide evidence sufficient to support his claim; (2) Defendant is entitled to qualified immunity; (3) Plaintiff's claim fails on the merits; (4) Plaintiff is not entitled to compensatory or punitive damages. (*See* ECF No. 58.)

Plaintiff replied, arguing Defendant's arguments were formalities that "shouldn't be given much merit." Plaintiff also reiterates arguments based on allegations that are not part of this case. (*See* ECF No. 67.)

**B. Defendant's Motion to Seal**

Defendant filed a motion for leave to file Plaintiff's medical records under seal in connection with the motions for summary judgment. (ECF No. 59.)

"Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks and citation omitted). "'Throughout our history, the open courtroom has been a fundamental feature of the American judicial system. Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings. These principles apply as well to the determination of whether to permit access to information contained in court documents because court records often provide important, sometimes the only, bases or explanations for a court's decision.'" *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983)).

Documents that have been traditionally kept secret, including grand jury transcripts and warrant materials in a pre-indictment investigation, come within an exception to the general right of public access. *See Kamakana*, 447 F.3d at 1178. Otherwise, "a strong presumption in favor of access is the starting point." *Id*. (internal quotation marks and citation omitted). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo (Amodeo II)*, 71 F.3d 1044, 1048 (2nd Cir. 1995); *Valley Broad Co. v. U.S. Dist. Ct.*, *D. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986)).

1    There are two possible standards a party must address when it seeks to file a document

2    under seal: the compelling reasons standard or the good cause standard. *Center for Auto Safety*,

3    809 F.3d at 1096-97. Under the compelling reasons standard, "a court may seal records only

4    when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without

5    relying on hypothesis or conjecture.'" *Id*. (quoting *Kamakana*, 447 F.3d at 1179). If the

6    document proposed for sealing accompany a motion that is "more than tangentially related to the

7    merits of the case," the compelling reasons standard is applied. *Center for Auto Safety*, 809 F.3d

8    at 1101.

9    Here, Defendant seeks to file exhibits under seal in connection with his motion for

10    summary judgment, which is unquestionably "more than tangentially related to the merits of a

11    case." Therefore, the compelling reasons standard applies.

12    This court and others within the Ninth Circuit have recognized the need to protect

13    medical privacy qualifies as a "compelling reason" for sealing records. *See, e.g., Moreno v.*

14    *Adamson,* No. 3:19-cv-0330-MMD-CLB, 2021 WL 76722 (De. Nev. Jan. 7, 2021); *San Ramon*

15    *Regional Med. Ctr., Inc. v. Principal Life Ins. Co.*, No. C 10-02258 SBA, 2011 WL89931, at

16    *n.1 (N.D. Cal. Jan. 10, 2011); *Abbey v. Hawaii Employers Mut. Ins. Co.*, No. 09-000545

17    SOM/BMK, 2010 WL4715793, at *1-2 (D. HI. Nov. 15, 2010); *Wilkins v. Ahern,* No. C 08-

18    1084 MMC (PR), 2010 WL3755654 (N.D. Cal. Sept. 24, 2010); *Lombardi v. TriWest Healthcare*

19    *Alliance Corp.*, No. CV-08-02381-PHX-FJM, 2009 WL 1212170, at *1 (D.Ariz. May 4, 2009).

20    This is because a person's medical records contain sensitive and private information about the

21    person's health. While a plaintiff puts certain aspects of his medical condition at issue when he

22    files an action alleging excessive force under the Eighth Amendment, that does not mean that the

23    entirety of his medical records filed in connection with a motion (which frequently contain

4

records that pertain to unrelated medical information) need be unnecessarily broadcast to the public. In other words, the plaintiff's interest in keeping his sensitive health information confidential outweighs the public's need for direct access to the medical records.

Here, the referenced exhibits contain Plaintiff's sensitive health information, medical history and treatment records. (ECF No. 60-1, 60-2 (sealed).) Balancing the need for the public's access to information regarding Plaintiff's medical history, treatment, and condition against the need to maintain the confidentiality of Plaintiff's medical records weighs in favor of sealing these exhibits. Therefore, Defendant's motion to seal medical records is granted.

**C. Plaintiff's Motion for Settlement before Trial**

Plaintiff also filed a motion titled "Video Motion Hearing Before Trial to Reach Settlement." (ECF No. 69.) Plaintiff seeks "to try to reach a settlement before trial" and offers to settle for "50 Thousand money on my books." (*Id.* at 1.) Beyond the fact that filing an offer for settlement on the docket is improper, the instant order grants summary judgment in favor of Defendant and orders the Clerk to close the case. Thus, there will be no trial and therefore the request to reach settlement before trial is denied as moot.

The motion can also be denied because Plaintiff failed to sign the motion, instead writing "on-1 F@KE" in the signature line. (*Id.* at 2.) Pursuant to Federal Rule of Civil Procedure 11(a), all motions must be signed by a party personally if the party is unrepresented. Thus, the motion is also denied for failure to be signed by Plaintiff.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Legal Standard**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Where prison officials have acted in response to an immediate disciplinary need, because of the risk of injury to inmates and prison employees and because prison officials will not have time to reflect on the nature of their actions, the "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard, applies. *See Whitley*, 475 U.S. at 320–21; *Rodriguez*, 891 F.3d at 796 (9th Cir. 2018) ("A plaintiff cannot prove an Eighth Amendment violation without showing that force was employed 'maliciously and sadistically' for the purpose of causing harm."); *Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011); *Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002); *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (*en banc*); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986). The excessive force standard also applies when analyzing practices used in disciplinary segregation to respond to repeat offenders. *See LeMaire v. Maass*, 12 F.3d 1444, 1452–53 (9th Cir. 1993)

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). While *Whitley* used the phrase "maliciously and sadistically," an excessive

force claim does not require proof the officer enjoyed the use of force. *Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018). Instead, the focus is on whether the officer had purpose to cause harm: "[A]n officer who harms an inmate in part of a good-faith effort to maintain security has acted constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm.[,]' has engaged in excessive force, provided that the other elements of excessive force have been met." *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).

In determining whether the use of force is excessive, courts are instructed to examine: (1) "the extent of the injury suffered by an inmate[;]" (2) "the need for application of force[;]" (3) "the relationship between that need and the amount of force used[;]" (4) "the threat reasonably perceived by the responsible officials[;]" and (5) "any efforts made to temper the severity of the forceful response." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321) (internal quotations omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (*per curiam*). An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins*, 559 U.S. at 37-38. "The extent of injury may also provide some indication of the amount of force applied." *Id*.

That being said, not "every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is

gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be limited. *See id*. at 40.

Courts must be deferential when reviewing the necessity of using force. *See Whitley*, 475 U.S. at 321-22; *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2009), *cert. denied*, 562 U.S. 1215 (Feb. 22, 2011), (citing *Whitley*, 475 U.S. at 322) ("Prison officials are entitled to deference whether a prisoner challenges excessive force or conditions of confinement."); *Simmons v. G. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) (explaining that "prison officials should be accorded 'wide-ranging deference' when they are exercising their judgment to maintain prison safety," and that ["i]n the specialized context of prison operations, the use of force can be a 'legitimate means for preventing small disturbances from becoming dangerous to other inmates or the prison personnel'" (citations omitted)).

**B. Facts**

At ESP, each cell door is equipped with a "food slot," an opening in the door approximately 8" tall and 12" to 18" wide. (ECF No. 58-6 at 3, ECF No. 58-7 at 3.) The opening is covered by a flap, which connects to the door by a metal hinge at the bottom and a latch with a lock at the top. (*Id.*) The flap opens downward and rests at a 90-degree angle to the door, allowing food trays and other items to be placed on the flap. (*Id.*)

On January 4, 2021, Defendant was serving breakfast to inmates in Unit 5, where Plaintiff was housed in Cell 7. (ECF No. 1-1 at 4, ECF No. 58-6 at 3, ECF 58-1 at 4, ECF No. 65-2.) According to Plaintiff's sworn complaint, when Defendant opened Plaintiff's food slot, Plaintiff placed his hand on top of the food tray. (ECF No. 1-1 at 4.) Defendant's declaration

1  describes the event slightly differently, stating that instead of pulling the tray through into the

2  cell, Plaintiff placed the tray on the food slot. (ECF No. 58-6.) Regardless, the evidence

3  establishes that Plaintiff did not pull the tray into his cell but rather obstructed the food slot.

4        Defendant declares that Plaintiff next put his hands and arms in the food slot and on the

5  food tray. (ECF No. 58-6.) Based on this action, Defendant "reacted split-second by closing the

6  food slot." (*Id.* at 2.) Defendant states that Plaintiff's arms were caught in the food slot but "at no

7  time did [he] repeatedly open and close the food slot on Plaintiff's arms. (*Id.*) This contrasts with

8  Plaintiff's sworn complaint stating that Defendant slammed the food slot into Plaintiff's arms 4-5

9  times. (ECF No. 1-1 at 4.)

10        Plaintiff states that Defendant told him that if he did not close the food slot, Defendant

11  would break Plaintiff's arm. (*Id.*) Defendant does not recall if he said anything to Plaintiff during

12  the incident. (ECF No. 58-6 at 4.)

13        Defendant declares that after closing the food slot, Plaintiff was still holding the food

14  tray. (*Id.* at 3.) Defendant freed one of his hands to grab the food tray to pull it away from

15  Plaintiff. (*Id.*) When Plaintiff did not release the tray, Defendant removed his other hand from

16  the foot slot and "used both hands to wrench the tray away from [Plaintiff]." (*Id.*) Defendant then

17  walked away from the cell, threw the now empty tray aside, and reported the incident to the unit

18  supervisor. (*Id.* at 3-4.)

19        Defendant declares that at the time of the incident, he was aware that Plaintiff had a

20  reported history of capturing his food slot and propelling food trays and other objects at staff.

21  (ECF No. 58-6.) The evidence in the record shows Plaintiff had been written up on numerous

22  occasions for capturing or propelling items through the food slot prior to January 4, 2021. (ECF

23  No. 58-14 at 6-11, 18, 20, 22; ECF No. 65-2.)

According to the declarations of Defendant and Mike Boyd, who is responsible for training correctional officer cadets, the only reason an inmate would have to place any part of their body within the food slot is to capture the food slot or propel an object through the slot. (ECF No. 58-6.) Based on this, prison staff "are trained to perceive such actions as an attempt to propel or otherwise harm or assault nearby inmates or staff." (*Id.*)

Defendant also provides video footage of Unit 5 during the incident. The video is roughly 30 seconds long, and the camera is located on a wall opposite Cell 7, where Plaintiff was housed. (ECF Nos. 62, 65-3.) Defendant and one other person are visible. Defendant can be identified because he is standing in front of Cell 7 while the other individual walks away from the cell and carries food trays up the stairs. When the video starts, Defendant is standing so his back is to the camera and blocks most of the view of the door to Cell 7. He stands in that position for just over ten seconds and then begins moving his upper body rapidly, as if he is grappling with someone. Although the view of Cell 7's door is obstructed, based on the view of the other doors in Unit 5 and a view of Cell 7's door after Defendant moves, the only opportunity to physically interact through the door is via the food slot. The video shows Defendant attempting to pull the tray away from the door and eventually use both hands to wrench the tray away from the door. It is unclear from the video how many times the food slot was closed during the altercation. Defendant then walks away from Cell 7 and throws the now-empty tray on the floor. As Defendant walks away, the video reveals Plaintiff's arms – up to his elbows – were extended through the food slot. (*See* ECF No. 62.)

At 11:30 A.M. on January 4, 2021, Nurse Schuering was called to Unit 5 to examine Plaintiff regarding the use of force incident earlier that day. (ECF No. 60-2 (sealed).) Nurse Schuering declares that his examination found that Plaintiff's skin was intact and did not have

1  contusions or other signs of trauma. (*Id.*) Plaintiff did not indicate he was in any pain and denied

2  knowledge of any incident that day, saying "What incident, I'm fine and don't need you." (*Id.*)

3  Based on this, Nurse Schuering declares he executed a form for "Release of Liability for Refusal

4  of Health Care Treatment," indicating Plaintiff's refusal to receive further medical attention. (*Id.*)

5  **C. Analysis**

6        In evaluating both motions for summary judgment, the court will begin by analyzing

7  whether there are any genuine disputes of material facts as to whether the alleged constitutional

8  violation occurred. Defendant may succeed on his motion by presenting evidence to negate an

9  essential element of Plaintiff's case or by demonstrating that Plaintiff cannot establish an

10  element essential to his case on which he will have the burden of proof at trial. *See Celotex*, 477

11  U.S. at 323-25. By contrast, Plaintiff bears the burden of proof at trial and therefore "must come

12  forward with evidence which would entitle [him] to a directed verdict if the evidence went

13  uncontroverted at trial." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (internal citations

14  omitted).

15        To succeed on his claim, Plaintiff must demonstrate that Defendant used excessive force

16  because he applied force to maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 9. In

17  evaluating whether Defendant used excessive force, courts must evaluate the *Hudson* factors: (1)

18  the extent of the injury suffered by Plaintiff; (2) the need for application of force; (3) the

19  relationship between the need to apply force and the amount of force used; (4) the threat

20  reasonably perceived by Defendant; and (5) any efforts made by Defendant to temper the

21  severity of the forceful response.[1] *Id.* at 7.

22

23

---

[1] Contrary to Plaintiff's argument, the *Hudson* factors are not a mere formality in evaluating an Eighth Amendment excessive force claim such as this one. (ECF No. 67 at 1.)

The medical records provided by Defendant show that Plaintiff was not seriously injured following the incident. The Nurse who examined Plaintiff later that day did not find any indications of trauma to the skin and noted that Plaintiff indicated he was not in pain. Although there is no need to demonstrate that a serious injury occurred, the fact that Plaintiff was not seriously – or even moderately – injured is relevant to the excessive force inquiry. *Hudson*, 503 U.S. at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Thus, the lack of injuries suffered by Plaintiff weighs against a finding of excessive force.

Next, the court will analyze the need for the application of force in this case. Based on Plaintiff's own allegations, he put his hand on the food tray. Defendant was trained to perceive the act of an inmate obstructing the food slot as an attempt to capture or propel items through the slot. Here, the court must be deferential to prison officials when they are exercising their judgment to maintain prison safety and that in the context of prison operations, the use of force can be a legitimate means for preventing small disturbances from becoming dangerous to prison personnel. *Simmons*, 47 F. 4th at 933. Based on this, the undisputed material facts show that there was a need to apply force.

Turning to the relationship between the need for application of force and the actual application of force, the evidence shows that the immediate threat was that Plaintiff could capture or propel items through the food slot, and Defendant could have been injured if Plaintiff did so. However, as Plaintiff was contained behind the cell door and could not do much more than throw objects and have limited use of his hands and arms outside the cell door, Defendant was not likely in danger of severe bodily harm. Thus, the need to apply force was present, but there was not a need to apply significant force. The use of force incident itself was over in less than twenty seconds and even if Defendant did slam the food slot 4-5 times, Plaintiff did not

1    suffer even moderate injuries. The evidence also establishes that once Defendant secured the

2    food tray and eliminated that risk, he walked away from the door. Thus, the actual application of

3    force was relatively small and therefore proportional to the need to apply force.

4         The court will now turn to the threat reasonably perceived by Defendant. Here,

5    Defendant was faced with an inmate he knew had a documented history of capturing the food

6    slot or propelling items through the food slot. He was also trained to perceive actions like those

7    taken by Plaintiff as being hostile and an attempt to capture the food slot or propel items through

8    the slot. These two facts combine to present a very reasonable threat to Defendant's safety. Even

9    without Plaintiff's documented history of similar acts, it would be reasonable for any officer to

10   perceive any inmate acting in the manner that Plaintiff acted as a reasonable threat.

11        Finally, based on Plaintiff's own allegations, Defendant attempted to temper the severity

12   of his response by verbally warning that if Plaintiff did not close the food slot, Defendant would

13   cause him bodily harm. Although the verbal warning did threaten harm, the warning establishes

14   that Defendant first attempted to prevent the use of force. Given the very brief nature of the

15   encounter, a single verbal warning is a sufficiently reasonable attempt to temper the severity of

16   the forceful response. *Hudson*, 503 U.S. at 7 (citations omitted).

17        In sum, all of the *Hudson* factors clearly weigh against a finding that Defendant acted

18   unconstitutionally by applying force maliciously or sadistically to cause harm. Rather, the

19   undisputed material facts show that Defendant used force only to the extent necessary to prevent

20   Plaintiff's "small disturbance" from becoming dangerous and did not injure Plaintiff in the

21   process.[2] *Simmons*, 47 F.4th at 933.  Consequently, Defendant has met his burden on summary

22

23   _____

[2] The court notes that even assuming *arguendo* that Plaintiff was harmed in the process, "an officer who harms an inmate in part of a good-faith effort to maintain security has acted constitutionally[.]" *Hoard*, 904 F.3d 788 (citation omitted).

15

judgment by providing evidence which negates a finding that he applied excessive force. *Celotex*, 477 U.S. at 323-25.

Turning to Plaintiff's burden, he must provide evidence to establish a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586. However, Plaintiff does not provide any evidence to support his allegations other than to conclude that he has asserted triable issues of fact. (*See* ECF No. 53, 67.) Consequently, Plaintiff has not met his burden on summary judgment and Defendant is entitled to summary judgment.[3] *Matsushita*, 475 U.S. at 587.

### IV. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (ECF No. 53) is DENIED, and Defendant's motion for summary judgment (ECF No. 58) is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to seal (ECF No. 59) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for settlement before trial (ECF No. 69) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.


Dated: May 2, 2025

_____
Craig S. Denney
United States Magistrate Judge

_____

[3] As the motion for summary judgment can be resolved on the merits, the court will not examine Defendant's arguments on qualified immunity or whether Plaintiff is entitled to compensatory or punitive damages.

16